## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ELIANA VALDERRAMA and JUAN FELIPE VANEGAS, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>CONMEBOL, CONFEDERACION SUDAMERICA DE FUTBOL, CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL, HARD ROCK STADIUM LLC, SOUTH FLORIDA STADIUM LLC, TICKETMASTER, LLC, LIVE NATION ENTERTAINMENT, INC., and JOHN DOES NO. 1-10,<br><br>             Defendants. | Civil Action No.: 1:24-cv-22772-XXXX<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Eliana Valderrama and Juan Felipe Vanegas (collectively "Plaintiffs"), individually and as class representatives, sue Defendants Conmebol, Confederacion Sudamerica De Futbol, Hard Rock Stadium LLC, South Florida Stadium LLC, Ticketmaster, LLC, and Live Nation Entertainment, Inc. (collectively "Defendants"). At all relevant times, Defendants owned, operated, controlled, managed, promoted, sold tickets to and were otherwise responsible or liable for the events and/or wrongdoing described herein.

### NATURE OF THE ACTION

1. Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all affected patrons who paid for ticket(s) for access or entry to the July 14, 2024 Copa America ("Copa" or "Copa America") soccer final between Colombia and Argentina at the Hard Rock Stadium ("HRS" or

the "Stadium") in Miami Gardens, Florida (the "Final")  and were unable to enter HRS, unable to view the match in its entirety from inside HRS, or from the seat they purchased.

2.      This case arises out of a nightmare endured by thousands of ticket buyers who could not enter HRS, enter HRS in a timely manner, or take their purchased seats due to Defendants actions.

3.      While eager and excited ticket buyers planned for what was supposed to be a truly special experience between two beloved national soccer teams, they were denied access due to chaos, cancellations, stampedes, and rejection at the gate despite paying for and presenting valid tickets.

4.      As to be expected, thousands of soccer fans and dedicated Colombian and Argentinian supporters, some of whom did not have tickets, arrived at the Stadium well in advance of the scheduled start time for tailgating, partying, and pregame festivities.

5.      These fans included ticket holders and non-ticket holders alike who were improperly granted access to, or near, the HRS grounds.

6.      As the crowds drew closer to the stadium, the throngs of fans, including both ticket holders and non-ticker holders, were not directed or compelled to disperse, remain organized, stay beyond certain perimeters, or in accordance with protocols for entry to the HRS "campus," which were part of the ticket terms and conditions, and/or policies and procedures to prevent or limit the chance of unauthorized access, unlawful entry, or a riot.

7.      Some fans took advantage of Defendants failure to manage, maintain, or direct the crowds and began to force their way into Stadium grounds, Stadium lines, and the Stadium.

2

8.      Instead of maintaining order and ensuring that bona fide ticket holders could enter the HRS, Defendants ceased to let anyone else inside the Stadium including bona fide ticket holders.

9.      To the shock and dismay of ticket holders, many of whom traveled thousands of miles or across the globe to attend, the HRS abruptly locked its doors to the Final and refused to provide access to valid ticket holders with little to no notice after they arrived at the Stadium.

10.     Defendants, as the owners, operators, organizers and promoters of Copa America, locked valid ticket holders out of the Stadium contrary to the terms of the ticket contract and without notice and without a reasonable explanation for the inadequate security, controls and protection.

11.     The valid ticket holders locked out of the Copa America Final have not been provided refunds for the price of their tickets and Defendants have not announced a plan, timeline, or proposal to provide refunds to ticker holders who were denied entry to the HRS or access to their seats.

## PARTIES

12.     Plaintiff Eliana Valderama is an adult residing in New York who purchased tickets for the Copa America Final match at HRS but was denied access.

13.     Plaintiff Juan Felipe Vanegas is an adult residing in New Jersey who purchased a ticket for the Copa America Final match at HRS but was denied access.

14.     Defendant Hard Rock Stadium LLC is located at 347 Don Shula Drive, Miami Gardens, Florida and owns and operates the sports stadium where the Copa America Final match took place.

15.     Defendant South Florida Stadium LLC is a Florida Limited Liability Company with its headquarters located at 347 Don Shula Drive, Miami Gardens, Florida where the Copa America Final match took place.

16.     Defendant CONMEBOL is a governing body focused on the organization and governance of football tournaments within Copa America, and the entity responsible for licensing competitions, certifying coaches, and enforcing anti-doping regulations to ensure fair play. It primarily serves the football community, including clubs, national teams, and associated football organizations. It was founded in 1916 and is based in Paraguay.

17.     Defendant Confederacion Sudamerica De Futbol is associated with or also known as CONMEBOL with its headquarters in Luque, Paraguay.

18.     Defendant CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL is associated with or also known as CONCACAF with its headquarters in Miami, Florida.

19.     Defendant Live Nation is a Delaware corporation with a principal place of business located at 9348 Civic Center Drive, Beverly Hills, CA 90210 and manages defendant Ticketmaster LLC as its sole member.

20.     Defendant Ticketmaster LLC is a Virginia limited liability company with a principal place of business located at 9348 Civic Center Drive, Beverly Hills, CA 90210. Upon information and belief, Ticketmaster is a single member limited liability company, with its sole member being Live Nation Worldwide, Inc, a Delaware corporation with a principal place of business located at 9348 Civic Center Drive, Beverly Hills, CA 90210. Ticketmaster is a citizen of each State in which its member is a citizen. Ticketmaster is therefore a citizen of the States of Delaware and California.

21.     Defendants Does 1-10 are person/parties responsible for the cancellation of Friday's shows and/or the oversold tickets held by class members, and/or who aided and abetted the named Defendants' wrongful conduct.

22.     Under Rule 15(c) of the Federal Rules of Civil Procedure, the true names and capacities of the Defendants, John Does 1-10, inclusive, whether individual or otherwise, are unknown to the Plaintiffs, who, therefore, sues said Defendants by such fictitious names and will further seek leave of this Honorable Court to amend this Complaint to reflect their true names and capacities when the same are ascertained.

23.     Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, coventurer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency, employment, joint venture and conspiracy.

24.     Plaintiffs allege upon information and belief that each of the Defendants designated as a Doe are responsible in some manner and liable herein to the Plaintiffs by reason of negligence, wanton and reckless misconduct, and/or in some other manner as alleged hereinafter by this Complaint, and by such wrongful conduct each of the Defendants proximately caused the injury and damage occasioned to the Plaintiffs herein.

## **JURISDICTION AND VENUE**

25.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

26.     The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

27.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

28.     This Court has personal jurisdiction over this matter because Defendants sold tickets and conducted business operations in this District.

## **GENERAL ALLEGATIONS**

29.     This case arises out of, among other things, the security, management, organization, planning, representations, and ticket sales for the Copa America Final after Defendants as Copa America owners, operators, organizers and/or promoters announced it would lock out thousands of valid ticker holders shortly before the Final was scheduled to begin.

30.     On July 14, 2024, the national soccer teams from Argentina and Colombia met to play at HRS in Miami Gardens, Florida for the highly anticipated Copa America soccer final.

31.     The Miami Gardens, Florida area and surrounding regions are home to a very large population of residents with Argentinian and Colombian ties, nationality, background and affiliation.

32.     The Colombian and Argentinian national soccer teams have a longstanding reputation as being some of the premier soccer teams in the world with millions of passionate fans across the globe.

33.     Argentina won the last World Cup in 2022 with the support of its star player, Lionel Messi, who was also expected to play in the Final and a local fan favorite for his role on Miami's Major League Soccer team, the Inter Miami CF.

34.     Colombian fans flocked to the Final in droves for soccer superstar James Rodriguez, who was named 2024 Copa America MVP, and musical icon Shakira who was slated to perform the halftime show.

35.     These fans, among tens of thousands of other dedicated soccer fans, some of whom flew thousands of miles incurring substantial travel costs to attend, purchased tickets costing over $1,000 for a single ticket.

36.     Despite purchasing and presenting valid tickets, Plaintiffs, and class members, were barred entry to the Final due to severe mismanagement, inadequate preparation and planning, and insufficient security measures by the Defendants as the owners, operators, and organizers of the Copa America final.

37.     Shortly before kickoff, non-ticket holders were given access to, among other areas, the southwest gate of the venue, causing many to be tackled and apprehended by police and security personnel. A stadium security guard confirmed to ESPN that the southwest gate had been closed because of a breach, before the entire venue went into lockdown.

38.     This unlawful entry of individuals into the arena, and the need for extensive security personnel and security measures, was a foreseeable consequence of Defendants' failure to implement adequate crowd control measures, security protocols, and ticket verification processes and to comply with its contractual agreement with ticket holders to allow only ticket holders access to the HRS "Campus."

39.     Indeed, Defendants should have been on notice for a potential uprising given a previous Copa America game in the 2024 tournament had also experienced turmoil and crowd control issues when the Colombia-Uruguay Copa America soccer match broke out into a massive fight.

40.     One witness to the Colombia-Uruguay Copa America brawl stated:

This is a disaster, our family was in danger. We had to get into the stands to get our loved ones out. There was not a single police officer, they fell within half an hour and we were there standing up for our own.[1]

41.     Videos of the chaos at the HRS spread all over social media with footage of the many fans without tickets forcing their way inside and overwhelming security.

42.     Thousands of valid ticket holders, who spent upwards of a $1,000 per ticket, were barred from entry to the HRS despite presenting a valid ticket for admission and forced to evacuate stadium grounds outside HRS without ever being allowed to enter or when they entered they found their seats occupied by non-ticket holders and could not take their purchased seat.

43.     In one interview, a valid ticket holder stated "So, there was a point where they opened the gates and all the people rushed in. And all the people that rushed in, none of them scanned their tickets," Dr. Manuel Fonseca said. *See* Sasha Jones, *Ticketed fans kept out of Copa America final want refunds*, NBC Miami, July 16, 2024, https://www.nbcmiami.com/responds/ticketed-fans-kept-out-of-copa-america-final-want-refunds/3362353/.

---

[1] *See* Esme Mazzeo, *Uruguay Players Fight Fans in Stands at Copa America Match After Losing to Colombia: 'A Disaster'*, July 11, 2024, People Magazine, https://people.com/uruguay-players-fight-colombia-fans-copa-america-match-8676522

44.     Fonseca spent $3,690 for a pair of tickets to the Copa America final. He said when he and his wife entered the gate, it was unsafe. *Id*.

45.     "And I made my way inside. But when I started seeing all those people rushing in, my wife was pregnant. I said, 'I'm definitely not going to risk this. Let's get outside.' Because my concern was that if a stampede gets developed there, what are we going to do?" he said. *Id*.

46.     Veronica Brunati, a correspondent for Fox Argentina, witnessed fans walking straight from the festival to the stadium. "I noticed there were no security perimeters [between the fan festival and the stadium gates]," she said. "Anyone could walk up to the gates, ticket or not. And they did." *See* Asli Pelit, *Conmeebol Blames Hard Rock Stadium for Copa America Chaos*, Sportico,        https://www.sportico.com/leagues/soccer/2024/copa-america-final-ticket-chaos-conmebol-1234789479/.

47.     Martin Fradkin, a producer with ESPN's content development unit who attended the game as a fan, pointed to serious organizational failures. "In my opinion, there was a complete lack of communication among the organizers," he said. "It's not just CONMEBOL but also CONCACAF [and] the stadium staff. Accountability remains unclear."  *Id*.

48.     Steadman Stahl, president of the South Florida Police Benevolent Association, the police union, stated "It was a calamity of errors on all levels." Charles Rabin, Douglas Hanks, Michelle Kaufman,  *Lax security for walk-ins led to breach, chaos at Hard Rock Stadium's Copa America final*, Miami Herald, July 15, 2024, https://ca.news.yahoo.com/lax-security-walk-ins-led-210057092.html.

49.     Despite the outrage and well documented riot, lack of security, staff, personnel, controls, and proper perimeters and checkpoints to effectively monitor, manage, and control ticket holders and non-ticket holders, none of the Defendants as owners, operators, organizers or

promoters for the Copa America Final have taken responsibility for the security breach and denying access to valid ticker holders.

50.     Rather, Hard Rock Stadium and CONMEBOL have exchanged opposing positions with statements for their role in the resulting chaos.

51.     In the early hours of Monday morning, July 15, 2024, Hard Rock Stadium released a statement saying that all parties worked together to address the situation:

> When it became apparent that it would not be safe to start the match at 8 p.m., a joint decision was made to postpone. Shortly after 8 p.m., stadium officials, CONMEBOL, CONCACAF and law enforcement officers communicated and decided to open stadium gates for a short period of time to all fans to prevent stampedes and serious injury at the perimeter," read the statement.

52.     Later that same Monday, July 15, 2024, CONMEBOL, which puts on the quadrennial tournament, released a statement that pointed a finger at Hard Rock Stadium. (Concacaf, the North American federation, was supposed to be a co-organizer of the tournament because of its location in the United States, but appears to have taken a backseat to CONMEBOL generally.):

> In this situation, CONMEBOL was subject to the decisions made by the Hard Rock Stadium authorities, according to the contractual responsibilities established for security operations. In addition to the preparations determined in this contract, CONMEBOL recommended to these authorities the procedures proven in events of this magnitude, which were NOT taken into account," the statement read.

53.     Class members have yet to receive refunds or information about a plan to disburse refunds for canceling and/or for denying entry or refusing access to the Copa America Final despite those class members collectively incurring millions of dollars in costs and expenses.

54.     On information and belief, Defendants profited handsomely from the Copa America Final raking in millions of dollars in net proceeds including proceeds from ticket sales yet to be refunded to Plaintiffs and class members.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs seek certification under Fed. R. Civ. P. 23 of the following classes:

**National Class:** All persons who purchased tickets to the Final and were denied entry to the Final for all claims except New York and New Jersey consumer laws.

**New York Subclass:** All persons in the State of New York who purchased tickets to the Final in the State of New York and were denied entry to the Final.

**New Jersey Subclass:** All persons in the State of New Jersey who purchased tickets to the Final in the State of New York and were denied entry to the Final.

56.     This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. The class includes all persons who purchased tickets to the Final but did not enter the HRS.

57.     This action satisfies the predominance, typicality, numerosity, superiority, and adequacy requirements of these provisions.

   a.   Numerosity: The plaintiff class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and based thereon alleges, that over 65,000 tickets persons were sold to the Final.

   b.   Commonality: Common questions of law and fact exist as to all members of the plaintiff class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

      i.   Whether Defendants made false representations about the Final at HRS;

ii.  If so, whether Defendants knew they were false or were reckless as to their veracity at the time they were made;

iii.  Whether Defendants negligently misrepresented various facts regarding the Final at HRS; and

iv.  Whether Defendants breached any implied or explicit contractual obligations to ticket buyers for the Final;

v.  Whether Defendants beached any express or implied contractual warranties;

vi.  Damages suffered by class members.

c.  Typicality: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the members of the class sustained damages arising out of Defendants' wrongful and fraudulent conduct as alleged herein.

d.  Adequacy: Plaintiffs will fairly and adequately protect the interests of the members of the class. Plaintiffs have no interest that are adverse to the interests of the other Class Members.

e.  Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and

burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments

f.  Public Policy Considerations: When a company or individual engages in fraudulent and predatory conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party. Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of fraud, breach contract, and other causes of action, are common to the Class Members. The factual questions relating to Defendants' wrongful conduct and their ill-gotten gains are also common to the Class Members.

58.  Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and the other members of the Class sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

59.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

60.     A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to seek redress individually for the wrong done to them. There will be no difficulty in the management of this action as a class.

**COUNT I**
**NEGLIGENT MISREPRESENTATION RELIANCE**
**(By Plaintiffs Individually and On Behalf of All Class Members Against All Defendants)**

61.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

62.     As stated above, Defendants made false representations about entry protocols and security which misled Plaintiffs.

63.     Defendants have, through various social media outlets, promoted the Final vigorously. Although Defendants may have honestly believed that these representations were true, based on the lack of preparation of the event, Defendants had no reasonable grounds for believing the representations were true when they made it.

**COUNT II**
**BREACH OF CONTRACT**
**(By Plaintiffs Individually and On Behalf of All Class Members Against All Defendants)**

64.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein

14

65.     Plaintiffs and all other members of the class entered into valid and enforceable contracts with Defendants for the Final.

66.     Plaintiffs and all other members of the class fully performed under the contracts by paying valuable consideration to Defendants.

67.     Defendants breached the contracts by denying ticket holders/ buyers access to the Final.

68.     As a direct and proximate result of said breach, Plaintiffs and all other members of the class have suffered actual and consequential damages.

**COUNT III**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(By Plaintiffs Individually and On Behalf of All Class Members Against All Defendants)**

69.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

70.      Plaintiffs entered into a contract with Defendants to provide the Final in exchange for money. Plaintiffs provided payment in consideration for Defendants' promise to allow entry to the Final.

71.      As shown above, Defendants failed to provide the security and protocols as advertised or implied.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiffs Individually and On Behalf of All Class Members Against All Defendants)**

72.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

73.    Defendants have all benefitted financially as a result of the ticket sales and revenue generated by the tickets Plaintiffs and class members purchased for the Copa America Final but who were not allowed to enter.

74.    Defendants have not paid or reimbursed Plaintiffs or the class for these purchases.

75.    Consequently, the Defendants have been unjustly enriched at the expense of Plaintiffs and, in good conscience and equity, are liable to Plaintiffs.

### COUNT V
### VIOLATION OF N.Y. GBL § 349
**(By Plaintiff Eliana Valderrama Individually and On Behalf of All New York Class Members Against All Defendants)**

76.    Plaintiffs repeat reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

77.    Plaintiffs and the other members of the Class and subclass have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL").

78.    Defendants engaged in acts and practices in the State of New York that were deceptive or misleading in a material way, and that injured Plaintiffs and the other members of the Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

79.    Defendants' deceptive acts include misrepresenting, representing or omitting that (1) the all valid ticker holders would have access to the Copa America Final or their selected seats for the Copa America Final; (2) Defendants had all the necessary security, staff, suppliers, vendors, labor and personnel to handle the ticket holders, guests, crowds, and trespassers; (3) the Copa America Final would not be oversold, exceed capacity or accessible to non-ticket holders; (4) the

16

HRS capacity and crowd control would not violate, and comply at all times with, fire codes and other capacity and safety rules and regulations applicable to games or sporting event; (5) that Defendants would provide a safe and secure environment for ticket holders.

80.     Plaintiffs and the other members of the Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual, or, alternatively, statutory, damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

81.     Plaintiffs and the other members of the Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

### COUNT VI
**Violation Of Florida Deceptive And Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *Et Seq.***
**(On Behalf Of The National Class)**

82.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

83.     Plaintiff brings this claim on behalf of the class of all ticket purchasers.

84.     The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

85.     The Class are "consumers" and "interested parties or persons" under the FDUTPA. Fla. Stat. § 501.203(6) and (7).

86.     Defendants are engaged in the conduct of "trade or commerce" as defined by the FDUTPA. Fla. Stat. § 501.203(8).

87.     One of the primary purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

88.     Defendants committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions and/or otherwise violated the FDUTPA. Defendants intentionally and knowingly misrepresented their security, safety, staffing, personnel, and management protocols and capabilities. Defendants' misrepresentations and omissions constitute unfair acts or practices in violation of the FDUTPA because they offend public policy, are immoral, unethical, oppressive, or unscrupulous and/or cause substantial financial damages to consumers.

89.     Defendants knew or should have known that they could not properly control or direct the substantial crowds and non-ticker holders who gathered and/or invaded the HRS.

90.     Defendants owed a duty to disclose their inability to control crowds and the extent of their security, safety, staffing, personnel, and management protocols and capabilities to the Class because they possessed superior and exclusive knowledge. Rather than disclose these shortcomings, Defendants engaged in deceptive trade practices in order to sell tickets at higher profits and wrongfully transfer the cost of their consequences to the Class.

91.     Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, Defendants unconscionably marketed the Final to uninformed consumers in order to maximize profits.

92.     Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions were likely to mislead a reasonable consumer and misled Plaintiff and members of the Class. When Plaintiff and members of the Class purchased their tickets, they reasonably relied on the reasonable expectation that they would be admitted to the Final.

93.     Had Defendants disclosed these problems, Plaintiffs and the Class would not have purchased their tickets, or would have paid less for their tickets.

94.     Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions are substantially injurious to consumers. As a direct and proximate result of Defendants knowing, intentional concealment and omissions in violation of the FDUTPA, Plaintiffs and the Class have suffered harm and/or continue to suffer harm, and/or actual damages to be determined at trial.

95.     As a result of Defendants' FDUTPA violation, Plaintiff and members of the Class are entitled to, inter alia, injunctive and declaratory relief, actual damages, costs and attorneys' fees. See Fla. Stat. § 501.211.

**COUNT VII**
**Violation Of New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 et. seq.**
**(On Behalf of Plaintiff Juan Felipe Vanegas of The New Jersey Sub-Class)**

96.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

97.     Defendants' business acts and practices and/or omissions are deceptive, unconscionable, unlawful, misleading and unfair under the above-identified consumer protection statutes.

98.     Plaintiff Juan Felipe Vanegas and the other members of the New Jersey Subclass have been injured and suffered damages by violations of section New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 et. Seq.

99.     Plaintiffs and the other members of the New Jersey Subclass seek treble damages, special damages, and an award of reasonable attorney's fees pursuant to New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 et. Seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of the Class Members and Subclass Members, as well as the general public, pray for judgment as follows:

### CLASS CERTIFICATION:

1.      For an order certifying the proposed Class and subclasses;

2.      That Plaintiffs be appointed as the Representatives of the Class and subclasses; and

3.      That counsel for Plaintiffs be appointed as Class Counsel and subclass counsel.

### AS TO ALL CAUSES OF ACTION:

1.      For all actual, consequential, and incidental losses and damages, according to proof;

2.      For punitive or treble damages, where permitted by law;

3.      For attorneys' fees, where permitted by law;

4.      For costs and suit herein incurred;

5.      Awarding Plaintiffs and the other members of the Class and subclasses treble damages for Defendants' violations of NY GBL § 349;

6.      Awarding Plaintiffs and the other members of the Class treble damages for Defendants' violations of Fla. Stat. § 501.201 *Et Seq*;

7.      Awarding Plaintiffs and the other members of the Class and subclasses treble damages for Defendants' violations of New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 et. seq; and

8.      For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Dated: July 19, 2024                                    Respectfully submitted,

**KRAFF LAW GROUP, PA**
800 SE 4th Avenue, Suite 717
Hallandale Beach, FL 33009
Telephone: (305) 995-0401
Facsimile: (305) 995-0304
alex@krafflawgroup.com
Attorney for Plaintiffs
*/s/ Alexander Kraff*
Alexander Kraff, Esq.
Florida Bar No. 1031989

**MOORE LAW, PLLC**
Fletcher Moore (*pro hac vice* forthcoming)
30 Wall Street, 8th Floor
New York, New York 10005
Telephone: (212) 709-8245
Facsimile: (917) 634-3035
fletcher@fmoorelaw.com

**SQUITIERI & FEARON, LLP**
Lee Squitieri (*pro hac vice* forthcoming)
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Lee@sfclasslaw.com